UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - v. -

EMILE E. GOUIRAN,

          Defendant.

I N D I C T M E N T

Cr. No. _____
(T. 26, U.S.C., § 7201
T. 26, U.S.C., § 7206(2)
T. 18, U.S.C., § 2
T. 18, U.S.C., § 371
T. 18, U.S.C., § 1001
T. 18, U.S.C., § 1343
T. 18, U.S.C., § 2314
T. 18, U.S.C., § 3551 et seq.
T. 18, U.S.C., § 3623 (1984)
T. 31, U.S.C., § 5322)

- - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Indictment, unless otherwise stated:

1. Gouiran Holdings, Inc. ("GHI"), also known as D. Gouiran Realty Holdings Company, was a New York corporation with its principal place of business at 386 Forest Avenue, Staten Island, New York. On or about October 27, 1983, GHI was licensed by the New York State Banking Department as a mortgage banker. GHI was a "financial institution" as defined by Title 31, United States Code, Section 5312.

2. To obtain funds with which to make mortgage loans, GHI offered interest bearing "subordinated debentures" and "mortgage participation notes" to investors. The "subordinated debentures" were categorized as demand accounts, term accounts and warehouse

-2-

accounts and were similar in nature to passbook savings accounts and certificates of deposits. The "mortgage participation notes" were certificates representing ownership interests in non-federally financed mortgages issued by GHI.

3. Each "subordinated debenture" and "mortgage participation note" was assigned an account number. Deposits to and withdrawals from the account and the interest earned were recorded in the customer's passbook and on GHI's account ledger card.

4. On or about June 7, 1984, the defendant EMILE E. GOUIRAN was licensed to practice law in the State of New Jersey. He maintained a law office at 386 Forest Avenue, Staten Island, New York.

5. The defendant EMILE E. GOUIRAN acted as legal advisor and manager of GHI.

6. Peter V. Fleming, M.D., a licensed opthamologist, was a client of the defendant EMILE E. GOUIRAN and invested money with GHI.

7. On or about January 6, 1984, P.V.F. Holding Corporation ("P.V.F.") was incorporated by the defendant EMILE E. GOUIRAN as a New York corporation with its principal place of business at 386 Forest Avenue, Staten Island, New York. Peter V. Fleming, M.D.'s investments in GHI's "subordinated debentures" and "mortgage participation notes" were held in the name of P.V.F.

8. On or about February 1984, the Fleming Trust was established by the defendant EMILE  E. GOUIRAN for the Peter V.

-3-

Fleming, M.D. family.  The defendant EMILE E. GOUIRAN was trustee of this trust.

9.  On or about January 14, 1983, Raicco Medical Supplies, Inc. ("Raicco") was incorporated by the defendant EMILE E. GOUIRAN as a New York corporation with its principal place of business at 386 Forest Avenue, Staten Island, New York.

10.  On or about November 1982, Star Office Maintenance ("Star") was established by the defendant EMILE E. GOUIRAN as a New York company with its principal place of business at 386 Forest Avenue, Staten Island, New York.

11.  Larry Carlson was a client of the defendant EMILE E. GOUIRAN and an investor in GHI.

12.  Ralph Raia was a customer of and investor in GHI.

13.  James Panzella was a customer of and investor in GHI.

14.  Colonial Mortgage Company ("Colonial"), a division of Colonial Federal Savings and Loan Association, was a mortgage lending company headquartered in Cape Girardeau, Missouri with a branch office at 3637 South Geyer Road, St. Louis, Missouri.

15.  Kirk Heatwole was a Vice-President of GHI.

16.  Citibank, N.A. ("Citibank") was a bank organized under the laws of the United States of America, which was headquartered in New York, New York.  Citibank was a "financial institution" as defined by Title 31, United States Code, Section 5312.

17.  GHI was a banking customer of Citibank and used a Citibank branch office located on Forrest Avenue, Staten Island,

-4-

New York to make the deposits of cash which are the subject of Counts Sixteen through Nineteen of this Indictment.

18.   The Internal Revenue Service ("IRS") was a constituent agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States including collecting the taxes paid into the Treasury of the United States of America by its citizens.

<u>COUNT ONE</u>

19.   Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

<u>The Conspiracy</u>

20.   From in or about 1981 through and including August 5, 1990, within the Eastern District of New York and elsewhere, the defendant EMILE E. GOUIRAN and others both known and unknown to the Grand Jury did unlawfully, wilfully and knowingly combine, conspire, confederate and agree together and with each other (1) to defraud the United States and the IRS by impeding, impairing, obstructing and defeating the lawful governmental functions of the IRS in the ascertainment, evaluation, assessment and collection of income taxes, and (2) to commit certain offenses against the United States, to wit:  to violate Title 26, United States Code, Section 7201.

<u>The Goals Of The Conspiracy</u>

21.   It was a principal goal of the conspiracy to impede and impair the IRS in determining the correct taxable income of Peter V. Fleming, M.D. and, by concealing from the IRS the true amount

of income and business expenses of Peter V. Fleming, M.D.'s
medical practice, to reduce the amount of taxable income reported
by Peter V. Fleming, M.D. on his joint U.S. Individual Income Tax
Returns, Forms 1040, and to evade and defeat the tax due and
owing thereon.

## Statutory Objects

22.  It was further a part of the conspiracy that the
defendant EMILE E. GOUIRAN and his co-conspirators would and did
defraud the United States and the IRS by impeding, impairing,
obstructing and defeating the lawful functions of the IRS in the
ascertainment, evaluation, assessment and collection of income
taxes, and would and did defraud the United States out of income
taxes lawfully due and owing to it, and out of truthful and
accurate information relating to the income tax liabilities and
tax returns of Peter V. Fleming, M.D. that they had a duty to
maintain and provide, all in violation of Title 18, United States
Code, Section 371.

23.  It was further a part of the conspiracy that the
defendant EMILE E. GOUIRAN and his co-conspirators would and did
unlawfully, wilfully and knowingly attempt to evade and defeat
the individual income taxes, and the payment thereof, of Peter V.
Fleming, M.D. and his wife for the years 1983, 1984, 1985, 1986,
and 1987, in violation of Title 26, United States Code, Section
7201.

-6-

## The Means By Which The Conspiracy Was Carried Out

24.  Among the means by which the defendant EMILE E. GOUIRAN and his co-conspirators would and did carry out the conspiracy were the following:

a.  From in or about 1981 through and including 1988, Peter V. Fleming, M.D. maintained interest-bearing investment accounts at GHI in the form of "subordinated debentures" and "mortgage participation notes".

b.  In or about 1983, the defendant EMILE E. GOUIRAN advised Peter V. Fleming to deposit patient checks from his medical practice into his accounts at GHI and not to report these checks as income on his joint U.S. Individual Income Tax Returns, Forms 1040.

c.  From in or about 1983 through and including January 1988, Peter V. Fleming, M.D. mailed patient checks from his medical practice to GHI.  The defendant EMILE E. GOUIRAN instructed the employees of GHI to credit these checks to one of Peter V. Fleming, M.D.'s accounts.

d.  In or about February 1984, the defendant EMILE E. GOUIRAN assisted Peter V. Fleming, M.D. in changing the name on his investment accounts at GHI from Peter V. Fleming, M.D. to P.V.F.

e.  In or about January 1983, the defendant EMILE E. GOUIRAN advised Peter V. Fleming, M.D. to write checks payable to Raicco and Star, ostensibly for medical supplies and office maintenance expenses, and to send these checks to GHI.

-7-

f.  From in about January 1983 through and including January 1988, Peter V. Fleming, M.D. wrote checks payable to Raicco and Star and mailed the checks to GHI.  The defendant EMILE E. GOUIRAN instructed GHI employees to deposit Peter V. Fleming, M.D.'s checks payable to Raicco and Star into accounts at Citibank held in the names of Raicco and Star.  The defendant EMILE E. GOUIRAN instructed GHI employees to write checks from the Raicco and Star accounts at Citibank payable to GHI.  These checks were negotiated by GHI and were credited to one of Peter V. Fleming, M.D.'s accounts at GHI.  Peter V. Fleming, M.D. never received any medical supplies or office maintenance services from Raicco or Star.

g.  From on or about March 19, 1984 through and including April 1988, the defendant EMILE E. GOUIRAN supplied financial information to the accountant who prepared Peter V. Fleming, M.D.'s joint U.S. Individual Income Tax Returns, Forms 1040.  The defendant EMILE E. GOUIRAN included the false and fraudulent payments to Raicco and Star as business expenses in his computation of deductions for use in the preparation of Peter V. Fleming, M.D.'s joint U.S. Individual Income Tax Returns, Forms 1040, for 1983, 1984, 1985, 1986 and 1987.  Further, the defendant EMILE E. GOUIRAN calculated the gross receipts from Peter V. Fleming's, M.D.'s medical practice for use in the preparation of his joint U.S. Individual Income Tax Returns, Forms 1040, without including the patient checks which had been deposited into Peter V. Fleming, M.D.'s accounts at GHI.

-8-

h.   On the joint U.S. Individual Income Tax Returns, Forms 1040, which Peter V. Fleming, M.D. filed with the IRS on behalf of himself and his wife for each of the years 1983, 1984, 1985, 1986 and 1987, the checks which Peter V. Fleming, M.D. had written to Raicco and Star were claimed as business expense deductions of his medical practice and the patient checks which had been deposited at GHI were not reported as income from his medical practice.

### Overt Acts

25.   In furtherance of this conspiracy, and to effect the objects thereof, the defendant EMILE E. GOUIRAN and his co-conspirators committed the following overt acts, among others, in the Eastern District of New York and elsewhere:

a.   From in or about 1981 through and including 1988, Peter V. Fleming, M.D. maintained accounts at GHI consisting of investments in "subordinated debentures" and "mortgage participation notes".

b.   From in or about 1983 through and including January 1988, Peter V. Fleming, M.D. deposited patient checks totalling approximately Four Hundred Twenty-Five Thousand Dollars ($425,000.00) into his accounts at GHI.

c.   From in or about 1983 through and including January 1988, the defendant EMILE E. GOUIRAN instructed GHI employees to negotiate the patient checks totalling approximately Four Hundred Twenty-Five Thousand Dollars ($425,000.00) received from Peter V.

-9-

Fleming, M.D. and credit them to Peter V. Fleming, M.D.'s accounts at GHI.

     d.  In or about January 1983, the defendant EMILE E. GOUIRAN advised Peter V. Fleming, M.D. to make checks payable to Raicco and Star and to claim the total amount of these checks each year as a business expense deduction of his medical practice on his joint U.S. Individual Income Tax Returns, Forms 1040.

     e.  From in or about January 1983 through and including January 1988, the defendant EMILE E. GOUIRAN instructed GHI employees to deposit Peter V. Fleming, M.D.'s checks to Raicco, totalling approximately One Hundred Eighty-Five Thousand, One Hundred Fifty-Five Dollars and Thirty-Three Cents ($185,155.33), and Star, totalling approximately Thirty-Three Thousand, Six Hundred Forty Dollars and Six Cents ($33,640.06) into accounts in the names of Raicco and Star at Citibank, to write checks in corresponding amounts payable to GHI from these Citibank accounts, and to credit these amounts to Peter V. Fleming, M.D.'s accounts at GHI.

     f.  On or about March 19, 1984, the defendant EMILE E. GOUIRAN prepared a year-end summary of Peter V. Fleming, M.D.'s income and expenses for use in completing the 1983 joint U.S. Individual Income Tax Return, Form 1040, of Peter V. Fleming, M.D. and his wife.  In this summary, the defendant EMILE E. GOUIRAN included the Raicco and Star checks as business expenses of Peter V. Fleming, M.D.'s medical practice and omitted the

-10-

patient checks which had been deposited at GHI from the computation of gross receipts.

g. On or about March 19, 1984, the defendant EMILE E. GOUIRAN supplied the 1983 year-end summary to the accountant who prepared Peter V. Fleming, M.D.'s 1983 joint U.S. Individual Income Tax Return, Form 1040.

h. On or about April 15, 1984, Peter V. Fleming, M.D. signed a joint U.S. Individual Income Tax Return, Form 1040, on behalf of himself and his wife, for the year 1983, on which he claimed the checks written to Raicco and Star as business expense deductions of his medical practice and failed to report the patient checks which had been deposited at GHI as income from his medical practice.

i. On or about March 22, 1985, the defendant EMILE E. GOUIRAN prepared a year-end summary of Peter V. Fleming, M.D.'s income and expenses for use in completing the 1984 joint U.S. Individual Income Tax Return, Form 1040, of Peter V. Fleming, M.D. and his wife. In this summary, the defendant EMILE E. GOUIRAN included the Raicco and Star checks as business expenses of Peter V. Fleming, M.D.'s medical practice and omitted the patient checks which had been deposited at GHI from the computation of gross receipts.

j. On or about March 22, 1985, the defendant EMILE E. GOUIRAN supplied the 1984 year-end summary to the accountant who prepared Peter V. Fleming, M.D.'s 1984 joint U.S. Individual Income Tax Return, Form 1040.

-11-

k.  On or about April 15, 1985, Peter V. Fleming, M.D.
signed a joint U.S. Individual Income Tax Return, Form 1040, on
behalf of himself and his wife, for the year 1984, on which he
claimed the checks written to Raicco and Star as business expense
deductions of his medical practice and failed to report the
patient checks which had been deposited at GHI as income from his
medical practice.

l.  On or about March 24, 1986, the defendant EMILE E.
GOUIRAN prepared a year-end summary of Peter V. Fleming, M.D.'s
income and expenses for use in completing the 1985 joint U.S.
Individual Income Tax Return, Form 1040, of Peter V. Fleming,
M.D. and his wife.  In this summary, the defendant EMILE E.
GOUIRAN included the Raicco and Star checks as business expenses
of Peter V. Fleming, M.D.'s medical practice and omitted the
patient checks which had been deposited at GHI from the computa-
tion of gross receipts.

m.  On or about March 24, 1986, the defendant EMILE E.
GOUIRAN supplied the 1985 year-end summary to the accountant who
prepared Peter V. Fleming, M.D.'s 1985 joint U.S. Individual
Income Tax Return, Form 1040.

n.  On or about May 23, 1986, Peter V. Fleming, M.D.
signed a joint U.S. Individual Income Tax Return, Form 1040, on
behalf of himself and his wife, for the year 1985, on which he
claimed the checks written to Raicco and Star as business expense
deductions of his medical practice and failed to report the

patient checks which had been deposited at GHI as income from his medical practice.

o.  In or about March 1987, the defendant EMILE E. GOUIRAN prepared a year-end summary of Peter V. Fleming, M.D.'s income and expenses for use in completing the 1986 joint U.S. Individual Income Tax Return, Form 1040, of Peter V. Fleming, M.D. and his wife.  In this summary, the defendant EMILE E. GOUIRAN included the Raicco and Star checks as business expenses of Peter V. Fleming, M.D.'s medical practice and omitted the patient checks which had been deposited at GHI from the computation of gross receipts.

p.  In or about March 1987, the defendant EMILE E. GOUIRAN supplied the 1986 year-end summary to the accountant who prepared Peter V. Fleming, M.D.'s 1986 joint U.S. Individual Income Tax Return, Form 1040.

q.  On or about April 15, 1987, Peter V. Fleming, M.D. signed a joint U.S. Individual Income Tax Return, Form 1040, on behalf of himself and his wife, for the year 1986, on which he claimed the checks written to Raicco and Star as business expense deductions of his medical practice and failed to report the patient checks which had been deposited at GHI as income from his medical practice.

r.  In or about March 1988, the defendant EMILE E. GOUIRAN prepared a year-end summary of Peter V. Fleming, M.D.'s income and expenses for use in completing the 1987 joint U.S. Individual Income Tax Return, Form 1040, of Peter V. Fleming,

-13-

M.D. and his wife.  In this summary, the defendant EMILE E.
GOUIRAN included the Raicco and Star checks as business expenses
of Peter V. Fleming, M.D.'s medical practice and omitted the
patient checks which had been deposited at GHI from the computa-
tion of gross receipts.

s.  In or about March 1988, the defendant EMILE E.
GOUIRAN supplied the 1987 year-end summary to the accountant who
prepared Peter V. Fleming, M.D.'s 1987 joint U.S. Individual
Income Tax Return, Form 1040.

t.  On or about April 15, 1988, Peter V. Fleming, M.D.
signed a joint U.S. Individual Income Tax Return, Form 1040, on
behalf of himself and his wife, for the year 1987, on which he
claimed the checks written to Raicco and Star as business expense
deductions of his medical practice and failed to report the
patient checks which had been deposited at GHI as income from his
medical practice.

(Title 18, United States Code, Section 371;
Title 18, United States Code, Section 3551 et seq.)

## COUNT TWO

26.  Paragraphs 1 through 18 are repeated and realleged and
incorporated by reference as though fully set forth herein.

27.  On or about May 23, 1986, within the Eastern District
of New York, the defendant EMILE E. GOUIRAN, who was a resident
of Staten Island, New York, did knowingly and wilfully attempt to
evade and defeat a large part of the income tax due and owing by
Peter V. Fleming, M.D. and his wife to the United States of
America for the calendar year 1985, by concealing income which

-14-

Peter V. Fleming, M.D. derived from his practice of medicine, by
creating false and fictitious business expense deductions for
Peter V. Fleming, M.D.'s medical practice, and by causing to be
filed with the Internal Revenue Service Center, Holtsville, New
York, a false and fraudulent joint United States Individual
Income Tax Return, Form 1040, on behalf of Peter V. Fleming, M.D.
and his wife, wherein it was stated that their joint taxable
income for said calendar year was the sum of One Hundred Twenty-
One Thousand, and Ninety-Four Dollars ($121,094.00) and that the
tax due and owing thereon for the calendar year was Forty-Four
Thousand, Seven Hundred and Fifty-Four Dollars ($44,754.00)
whereas, as the defendant EMILE E. GOUIRAN then and there well
knew and believed, the joint taxable income of Peter V. Fleming,
M.D. and his wife for the calendar year 1985 was an amount in
excess of the stated amount and that upon such joint taxable
income there was an additional tax due and owing to the United
States of America.

> (Title 26, United States Code, Section 7201;
> Title 18, United States Code, Section 2;
> Title 18, United States Code, Section 3623 (1984).)

### COUNT THREE

28.   Paragraphs 1 through 18 are repeated and realleged and
incorporated by reference as though fully set forth herein.

29.   On or about April 15, 1987, within the Eastern District
of New York, the defendant EMILE E. GOUIRAN, who was a resident
of Staten Island, New York, did knowingly and wilfully attempt to
evade and defeat a large part of the income tax due and owing by

Peter V. Fleming, M.D. and his wife to the United States of America for the calendar year 1986, by concealing income which Peter V. Fleming, M.D. derived from his practice of medicine, by creating false and fictitious business expense deductions for Peter V. Fleming M.D.'s medical practice, and by causing to be filed with the Internal Revenue Service Center, Holtsville, New York, a false and fraudulent joint United States Individual Income Tax Return, Form 1040, on behalf of Peter V. Fleming, M.D. and his wife, wherein it was stated that their joint taxable income for said calendar year was the sum of One Hundred Thirty Thousand, and Forty-Nine Dollars ($130,049.00) and that the tax due and owing thereon for the calendar year was Forty-Nine Thousand, Four Hundred and Seventy-One Dollars ($49,471.00) whereas, as the defendant EMILE E. GOUIRAN then and there well knew and believed, the joint taxable income of Peter V. Fleming, M.D. and his wife for the calendar year 1986 was an amount in excess of the stated amount and that upon such joint taxable income there was an additional tax due and owing to the United States of America.

(Title 26, United States Code, Section 7201;
Title 18, United States Code, Section 2;
Title 18, United States Code, Section 3623 (1984).)

## COUNT FOUR

30.  Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

31.  On or about April 15, 1988, within the Eastern District of New York, the defendant EMILE E. GOUIRAN, who was a resident

of Staten Island, New York, did knowingly and wilfully attempt to evade and defeat a large part of the income tax due and owing by Peter V. Fleming, M.D. and his wife to the United States of America for the calendar year 1987, by concealing income which Peter V. Fleming, M.D. derived from his practice of medicine, by creating false and fictitious business expense deductions for Peter V. Fleming, M.D.'s medical practice, and by causing to be filed with the Internal Revenue Service Center, Holtsville, New York, a false and fraudulent joint United States Individual Income Tax Return, Form 1040, on behalf of the Peter V. Fleming, M.D. and his wife, wherein it was stated that their joint taxable income for said calendar year was the sum of One Hundred Seven Thousand, Seven Hundred and Ninety Dollars ($107,790.00) and that the tax due and owing thereon for the calendar year was Thirty-Five Thousand, Three Hundred and Thirty-Two Dollars ($35,332.00) whereas, as the defendant EMILE E. GOUIRAN then and there well knew and believed, the joint taxable income of Peter V. Fleming, M.D. and his wife for the calendar year 1987 was an amount in excess of the stated amount and that upon such joint taxable income there was an additional tax due and owing to the United States of America.

> (Title 26, United States Code, Section 7201;
> Title 18, United States Code, Section 2;
> Title 18, United States Code, Section 3623 (1984)
> Title 18, United States Code, Section 3551 et seq.)

## COUNT FIVE

32.   Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

33.  On or about May 23, 1986, within the Eastern District of New York, the defendant EMILE E. GOUIRAN did knowingly and wilfully aid and assist in, and procure, counsel, and advise the preparation and presentation of a joint United States Individual Income Tax Return, Form 1040, on behalf of Peter V. Fleming, M.D. and his wife, for the year 1985, which was false and fraudulent as to a material matter, to wit:  Form 1040, Line 8, interest income of Two Thousand, Three Hundred and Thirty-Seven Dollars ($2,337.00); whereas, as the defendant EMILE E. GOUIRAN then and there well knew and believed, the correct amount of interest income was an amount in excess of the stated amount.

(Title 26, United States Code, Section 7206(2);
Title 18, United States Code, Section 3623 (1984).)

## COUNT SIX

34.  Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

35.  On or about April 15, 1987, within the Eastern District of New York, the defendant EMILE E. GOUIRAN did knowingly and wilfully aid and assist in, and procure, counsel, and advise the preparation and presentation of a joint United States Individual Income Tax Return, Form 1040, on behalf of Peter V. Fleming, M.D. and his wife, for the year 1986, which was false and fraudulent as to a material matter, to wit:  Form 1040, Line 8, interest income of One Thousand, Nine Hundred and Twenty-Eight Dollars ($1,928.00); whereas, as the defendant EMILE E. GOUIRAN then and there well knew and believed, the correct amount of interest income was an amount in excess of the stated amount.

-18-

(Title 26, United States Code, Section 7206(2);
Title 18, United States Code, Section 3623 (1984).)

## COUNT SEVEN

36.   Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

37.   On or about April 15, 1988, within the Eastern District of New York, the defendant EMILE E. GOUIRAN did knowingly and wilfully aid and assist in, and procure, counsel, and advise the preparation and presentation of a joint United States Individual Income Tax Return, Form 1040, on behalf of Peter V. Fleming, M.D. and his wife, for the year 1987, which was false and fraudulent as to a material matter, to wit:   Form 1040, Line 8, interest income of Three Thousand, Seven Hundred and Ninety-One Dollars ($3,791.00); whereas, as the defendant EMILE E. GOUIRAN then and there well knew and believed, the correct amount of interest income was an amount in excess of the stated amount.

(Title 26, United States Code, Section 7206(2);
Title 18, United States Code, Section 3623 (1984);
Title 18, United States Code, Section 3551 et seq.)

## COUNT EIGHT

38.   Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

39.   On or about December 23, 1986, within the Eastern District of New York, the defendant EMILE E. GOUIRAN did knowingly and wilfully aid and assist in, and procure, counsel, and advise the preparation and presentation of a United States Corporation Income Tax Return, Form 1120, on behalf of Raicco Medical Supplies, Inc., for the fiscal year ending December 31,

1985, which was false and fraudulent as to a material matter, to

wit:  Form 1120, Line 1c, gross income of Fifty-Three Thousand,

Four Hundred Forty-Three Dollars and Eighty-Five Cents

($53,433.85); Form 1120, Line 2, cost of goods sold of Thirty-

Nine Thousand, Nine Hundred Ninety-Four Dollars and Sixty-Two

Cents ($39,994.62); Form 1120, Line 30, taxable income of Eleven

Thousand, Eight Hundred Forty-Five Dollars and Forty-Two Cents

($11,845.42); whereas, as the defendant EMILE E. GOUIRAN then and

there well knew and believed Raicco had no income or deductions

to report.

> (Title 26, United States Code, Section 7206(2);
> Title 18, United States Code, Section 3623 (1984).)

## COUNT NINE

40.  Paragraphs 1 through 18 are repeated and realleged and

incorporated by reference as though fully set forth herein.

41.  On or about July 6, 1987, within the Eastern District

of New York, the defendant EMILE E. GOUIRAN did knowingly and

wilfully aid and assist in, and procure, counsel, and advise the

preparation and presentation of a United States Corporation

Income Tax Return, Form 1120, on behalf of Raicco Medical Sup-

plies, Inc., for the fiscal year ending December 31, 1986, which

was false and fraudulent as to a material matter, to wit:  Form

1120, Line 1c, gross income of Thirty-Six Thousand, Four Hundred

Ninety-One Dollars and Seventy-One Cents ($36,491.71); Form 1120,

Line 2, cost of goods sold of Twenty-Seven Thousand, Three

Dollars and Thirty-Four Cents ($27,003.34); Form 1120, Line 30,

taxable income of negative Four Thousand, Eight Hundred Seventy-

-20-

Four Dollars and Eleven Cents (-$4,874.11); whereas, as the

defendant EMILE E. GOUIRAN then and there well knew and believed

Raicco had no income or deductions to report.

(Title 26, United States Code, Section 7206(2);
Title 18, United States Code, Section 3623 (1984).)

## COUNT TEN

42.  Paragraphs 1 through 18 are repeated and realleged and

incorporated by reference as though fully set forth herein.

43.  On or about April 15, 1986, within the Eastern District

of New York, the defendant EMILE E. GOUIRAN did knowingly and

wilfully aid and assist in, and procure, counsel, and advise the

preparation and presentation of a joint United States Individual

Income Tax Return, Form 1040, on behalf of Larry Carlson and his

wife, for the year 1985, which was false and fraudulent as to a

material matter, to wit:  Form 1040, Line 8, interest income of

Two Hundred and Ninety-Seven Dollars ($297.00); whereas, as the

defendant EMILE E. GOUIRAN then and there well knew and believed,

the correct amount of interest income was an amount in excess of

the stated amount.

(Title 26, United States Code, Section 7206(2);
Title 18, United States Code, Section 3623 (1984).)

## COUNT ELEVEN

44.  Paragraphs 1 through 18 are repeated and realleged and

incorporated by reference as though fully set forth herein.

45.  On or about April 15, 1987, within the Eastern District

of New York, the defendant EMILE E. GOUIRAN did knowingly and

wilfully aid and assist in, and procure, counsel, and advise the

preparation and presentation of a joint United States Individual
Income Tax Return, Form 1040, on behalf of Larry Carlson and his
wife, for the year 1986, which was false and fraudulent as to a
material matter, to wit:  Form 1040, Line 8, interest income of
Twenty-Seven Dollars ($27.00); whereas, as the defendant EMILE E.
GOUIRAN then and there well knew and believed, the correct amount
of interest income was an amount in excess of the stated amount.

(Title 26, United States Code, Section 7206(2);
Title 18, United States Code, Section 3623 (1984).)

## COUNTS TWELVE through FIFTEEN

46. Paragraphs 1 through 18 are repeated and realleged and
incorporated by reference as though fully set forth herein.

47. On or about the dates listed below, in the Eastern
District of New York, the defendant EMILE E. GOUIRAN knowingly
and wilfully aided, abetted, counseled, commanded, induced,
procured or caused GHI to fail to file with the IRS a Currency
Transaction Report, Form 4789, as required by law regarding the
transfer, payment and exchange of United States currency in an
amount in excess of Ten Thousand Dollars ($10,000.00), to wit:
the defendant EMILE E. GOUIRAN knowingly and wilfully aided,
abetted, counseled, commanded, induced, procured or caused GHI to
fail to file a Currency Transaction Report as required by law in
connection with the receipt of currency in the amounts set forth
below, as a pattern of illegal activity involving transactions of
currency in an aggregate of more than One Hundred Thousand
Dollars ($100,000.00) in a twelve-month period.

-22-

| COUNT | DATE OF TRANSACTION | CASH RECEIVED | FROM |
|-------|---------------------|---------------|------|
| 12 | January 21, 1986 | $95,000.00 | James Panzella |
| 13 | July 3, 1986 | $18,000.00 | Ralph Raia |
| 14 | December 26, 1986 | $25,000.00 | Ralph Raia |
| 15 | January 5, 1987 | $78,383.41 | James Panzella |

(Title 31, United States Code, Sections 5313 and 5322;
Title 18, United States Code, Section 2.)

<u>COUNT SIXTEEN</u>

48. Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

49. From on or about January 22, 1986 through and including February 16, 1986, within the Eastern District of New York and elsewhere, the defendant EMILE E. GOUIRAN did, in a matter within the jurisdiction of a department or agency of the United States, knowingly and wilfully conceal and cover up and cause to be concealed and covered up by trick, scheme and device, one or more material facts, to wit:  the defendant EMILE E. GOUIRAN engaged and participated in an unlawful scheme to conceal from the IRS, among other agencies of the United States, the structuring of cash deposits into amounts of less than Ten Thousand Dollars ($10,000.00) so as to avoid the filing of a Currency Transaction Report, Form 4789.

50. In furtherance of the scheme to conceal, the defendant EMILE E. GOUIRAN knowingly and wilfully aided, abetted, counseled, commanded, induced, procured or caused GHI, acting by and through its employees, to structure its deposit of Ninety-Five Thousand Dollars ($95,000.00) in cash into GHI's account at

-23-

Citibank into amounts of less than Ten Thousand Dollars ($10,000.00) thereby causing Citibank to fail to file a Currency Transaction Report with the IRS.

> (Title 18, United States Code, Section 1001;
> Title 18, United States Code, Section 2.)

### COUNT SEVENTEEN

51. Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

52. From on or about July 3, 1986 through and including July 8, 1986, within the Eastern District of New York and elsewhere, the defendant EMILE E. GOUIRAN did, in a matter within the jurisdiction of a department or agency of the United States, knowingly and wilfully conceal and cover up and cause to be concealed and covered up by trick, scheme and device, one or more material facts, to wit:  the defendant EMILE E. GOUIRAN engaged and participated in an unlawful scheme to conceal from the IRS, among other agencies of the United States, the structuring of cash deposits into amounts of less than Ten Thousand Dollars ($10,000.00) so as to avoid the filing of a Currency Transaction Report, Form 4789.

53. In furtherance of the scheme to conceal, the defendant EMILE E. GOUIRAN knowingly and wilfully aided, abetted, counseled, commanded, induced, procured or caused GHI, acting by and through its employees, to structure its deposit of Eighteen Thousand Dollars ($18,000.00) in cash into GHI's account at Citibank into amounts of less than Ten Thousand Dollars

($10,000.00) thereby causing Citibank to fail to file a Currency Transaction Report with the IRS.

> (Title 18, United States Code, Section 1001;
> Title 18, United States Code, Section 2.)

### COUNT EIGHTEEN

54. Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

55. From on or about December 26, 1986 through and including January 5, 1987, within the Eastern District of New York and elsewhere, the defendant EMILE E. GOUIRAN did, in a matter within the jurisdiction of a department or agency of the United States, knowingly and wilfully conceal and cover up and cause to be concealed and covered up by trick, scheme and device, one or more material facts, to wit:  the defendant EMILE E. GOUIRAN engaged and participated in an unlawful scheme to conceal from the IRS, among other agencies of the United States, the structuring of cash deposits into amounts of less than Ten Thousand Dollars ($10,000.00) so as to avoid the filing of a Currency Transaction Report, Form 4789.

56. In furtherance of the scheme to conceal, the defendant EMILE E. GOUIRAN knowingly and wilfully aided, abetted, counseled, commanded, induced, procured or caused GHI, acting by and through its employees, to structure its deposit of Twenty-Five Thousand Dollars ($25,000.00) in cash into GHI's account at Citibank into amounts of less than Ten Thousand Dollars ($10,000.00) thereby causing Citibank to fail to file a Currency Transaction Report with the IRS.

-25-

(Title 18, United States Code, Section 1001;
Title 18, United States Code, Section 2.)

## COUNT NINETEEN

57. Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

58. From on or about January 5, 1987 through and including May 15, 1987, within the Eastern District of New York and elsewhere, the defendant EMILE E. GOUIRAN did, in a matter within the jurisdiction of a department or agency of the United States, knowingly and wilfully conceal and cover up and cause to be concealed and covered up by trick, scheme and device, one or more material facts, to wit:  the defendant EMILE E. GOUIRAN engaged and participated in an unlawful scheme to conceal from the IRS, among other agencies of the United States, the structuring of cash deposits into amounts of less than Ten Thousand Dollars ($10,000.00) so as to avoid the filing of a Currency Transaction Report, Form 4789.

59. In furtherance of the scheme to conceal, the defendant EMILE E. GOUIRAN knowingly and wilfully aided, abetted, counseled, commanded, induced, procured or caused GHI, acting by and through its employees, to structure its deposit of Seventy-Eight Thousand, Four Hundred Thirty-Three Dollars and Forty-One Cents ($78,433.41) in cash into GHI's account at Citibank into amounts of less than Ten Thousand Dollars ($10,000.00) thereby causing Citibank to fail to file a Currency Transaction Report with the IRS.

-26-

(Title 18, United States Code, Section 1001;
Title 18, United States Code, Section 2.)

## COUNT TWENTY

60.    Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

61.    From on or about February 1988 through and including July 1988, within the Eastern District of New York and elsewhere, the defendant EMILE E. GOUIRAN knowingly and wilfully devised and intended to devise a scheme and artifice to defraud GHI and its investors and to obtain money and property by means of false and fraudulent pretenses and promises.

62.    It was a part of this scheme and artifice that in or about April 1988, the defendant EMILE E. GOUIRAN engaged in negotiations for the sale of GHI's mortgage servicing rights to Colonial for a price of approximately One Million, Seven Hundred Thousand Dollars ($1,700,000.00).

63.    It was a further part of this scheme and artifice that on or about April 25, 1988, the defendant EMILE E. GOUIRAN instructed Colonial to remit the down payment of Three Hundred Fifty Thousand Dollars ($350,000.00) via wire transfer of funds to the First Jersey National Bank, Landing, New Jersey, where the defendant EMILE E. GOUIRAN maintained an account.

64.    It was a further part of this scheme and artifice that on or about April 25, 1988, the Three Hundred Fifty Thousand Dollars ($350,000.00) from Colonial was deposited into the

account of the defendant EMILE E. GOUIRAN at the First Jersey
National Bank, Landing, New Jersey.

65.   It was a further part of this scheme and artifice that
on or about June 1, 1988, the signature of Kirk Heatwole, Vice-
President of GHI, was forged on a document which instructed
Colonial to remit the balance of One Million, Three Hundred
Fifty-Nine Thousand, Three Hundred and Thirty-Three Dollars and
Twenty-Three Cents ($1,359,336.23) via wire transfer of funds to
the First Jersey National Bank, Landing, New Jersey.

66.   It was a further part of this scheme and artifice that
on or about June 1, 1988, the defendant EMILE E. GOUIRAN
intercepted the One Million, Three Hundred Fifty-Nine Thousand,
Three Hundred and Thirty-Three Dollars and Twenty-Three Cents
($1,359,336.23) at First Jersey National Bank, and instructed an
employee of the bank to issue a cashier's check in that same
amount made payable in French to "bearer".  On or about June 1,
1988 First Jersey National Bank issued cashier's check number
0506000084 in the amount of One Million, Three Hundred Fifty-Nine
Thousand, Three Hundred and Thirty-Three Dollars and Twenty-Three
Cents ($1,359,336.23) payable to "Au Porteur".

67.   It was a further part of this scheme and artifice that
on or about June 1, 1988, the defendant EMILE E. GOUIRAN
instructed an employee of the First Jersey National Bank to
withdraw funds from his account and issue a cashier's check in
the amount of Two Hundred Forty Thousand Dollars ($240,000.00)
made payable in French to "bearer".  On or about June 1, 1988

-28-

First Jersey National Bank issued cashier's check number 0506000085 in the amount of Two Hundred Forty Thousand Dollars ($240,000.00) made payable to "Au Porteur".

68.   On or about June 15, 1988, First Jersey National Bank cashier's checks number 0506000084 and 0506000085 were negotiated with the Banque Romande, Geneva, Switzerland.

69.   In furtherance of the aforesaid scheme and artifice on or about April 25, 1988, the defendant EMILE E. GOUIRAN transmitted or caused to be transmitted by wire communication in interstate commerce a transfer of funds from Colonial to First Jersey National Bank.

> (Title 18, United States Code, Section 1343;
> Title 18, United States Code, Section 3551 et seq.)

## COUNT TWENTY-ONE

70.   Paragraphs 1 through 18 are repeated and realleged and incorporated by reference as though fully set forth herein.

71.   From on or about February 1988 through and including July 1988, within the Eastern District of New York and elsewhere, the defendant EMILE E. GOUIRAN did knowingly and wilfully devise and intend to devise a scheme and artifice to defraud GHI and its investors and to obtain money and property by means of false and fraudulent pretenses and promises.

72.   Paragraphs 61 through 68 are repeated and realleged and incorporated by reference as though fully set forth herein.

73.   In furtherance of the aforesaid scheme and artifice on or about June 1, 1988 the defendant EMILE E. GOUIRAN transmitted or caused to be transmitted by wire communication in interstate

commerce a transfer of funds from Colonial to First Jersey
National Bank.

> (Title 18, United States Code, Section 1343;
> Title 18, United States Code, Section 3551 et seq.)

## COUNT TWENTY-TWO

74.   Paragraphs 1 through 18 are repeated and realleged and
incorporated by reference as though fully set forth herein.

75.   On or about June 15, 1988, within the Eastern District
of New York and elsewhere, the defendant EMILE E. GOUIRAN
transported, transmitted, or transferred in interstate or foreign
commerce a cashier's check in the amount of Two Hundred Forty
Thousand Dollars ($240,000.00) knowing this cashier's check to
have been stolen, converted or obtained by fraud.

> (Title 18, United States Code, Section 2314;
> Title 18, United States Code, Section 3551 et seq.)

## COUNT TWENTY-THREE

76.   Paragraphs 1 through 18 are repeated and realleged and
incorporated by reference as though fully set forth herein.

77.   On or about June 15, 1988, within the Eastern District
of New York and elsewhere, the defendant EMILE E. GOUIRAN
transported, transmitted, or transferred in interstate or foreign
commerce a cashier's check in the amount of One Million, Three
Hundred Fifty-Nine Thousand, Three Hundred and Thirty-Three
Dollars and Twenty-Three Cents ($1,359,336.23) knowing this
cashier's check to have been stolen, converted or obtained by
fraud.

> (Title 18, United States Code, Section 2314;
> Title 18, United States Code, Section 3551 et seq.)

-30-

A TRUE BILL

_____
FOREPERSON

_____
GEORGE T. KELLEY, CHIEF
NORTHERN CRIMINAL ENFORCEMENT SECTION
TAX DIVISION
U.S. DEPARTMENT OF JUSTICE